**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

GABRIELLE SNYDER,
      Appellant,

     v.

DEPARTMENT OF HOMELAND
  SECURITY,
      Agency.

DOCKET NUMBER
CH-0752-23-0370-I-1

DATE:  July 27, 2026

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Shaun C. Southworth, Esquire, and Sadarie Mahens, Esquire,
  Atlanta, Georgia, for the appellant.

Steven J. Holtkamp, Esquire, Chicago, Illinois, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained her removal for medical inability to perform. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED as to the reason why the appellant did not prove her affirmative defense of retaliation for equal employment opportunity (EEO) activity, we AFFIRM the initial decision.

## BACKGROUND

The appellant was a GS-12 Customs and Border Protection Officer (CBPO), stationed at the Port of Cincinnati, Ohio. Initial Appeal File (IAF), Tab 10 at 26. This is a law enforcement position that entails carrying a Government-issued firearm and is subject to medical standards. IAF, Tab 8 at 14-16. On November 23, 2020, the Area Port Director ordered the appellant to appear at a fitness for duty examination, explaining that her "behavior and emotional state in the workplace, as observed by management, [we]re becoming increasingly erratic and disconcerting."[2] IAF, Tab 11 at 4-6.

The appellant submitted to a physical examination, which yielded normal results. IAF, Tab 9 at 5-14. The appellant then submitted to a psychiatric examination with one Dr. S, who found her fit for duty. IAF, Tab 11 at 7-19. However, upon receipt of additional information from the agency about the

---

[2] The Area Port Director also temporarily revoked the appellant's authority to carry a Government-issued firearm, pending the final fitness for duty determination. IAF, Tab 8 at 17-18.

appellant's conduct at work, Dr. S issued an addendum report, finding her not fit for duty. *Id.* at 20-24. The agency then referred the appellant's case to another psychiatrist, Dr. A, who agreed with Dr. S that the appellant was not fit for duty. *Id.* at 41-43. Based on these reports, the agency found that the appellant was not fit for duty. *Id.* at 44. Nevertheless, the agency took no immediate action against the appellant and instead allowed her to seek mental health treatment in the hope that her condition might improve. *Id.* at 59, 61.

Six months later, on February 25, 2022, the Area Port Director ordered the appellant to appear for a second fitness for duty examination. *Id.* at 62-64. The appellant was evaluated by clinical psychiatrist Dr. W, who found the appellant fit for duty. *Id*. at 65-78. The agency then referred the appellant's case to another psychiatrist, Dr. P, who disagreed with Dr. W and issued a report finding that the appellant was not fit for duty. IAF, Tab 10 at 4-13. After an unsuccessful attempt at reassignment, the agency removed the appellant effective May 31, 2023, based on a charge of "medical inability to perform [the] essential duties of a CBPO." *Id.* at 16-26.

The appellant filed a Board appeal, contesting the merits of her removal and raising affirmative defenses of retaliation for EEO activity and discrimination based on sex and disability. IAF, Tab 1 at 2, Tab 30 at 5-7, Tab 45 at 3-9. After a hearing, the administrative judge issued an initial decision sustaining the appellant's removal. IAF, Tab 62, Initial Decision (ID). She sustained the charge, found that the appellant did not prove any of her affirmative defenses, and determined that the penalty of removal promoted the efficiency of the service. *Id.*

The appellant has filed a petition for review, contesting the administrative judge's assessment of the evidence and application of the law.[3] Petition for Review (PFR) File, Tab 3. The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 5-6.

## ANALYSIS

In an appeal of an adverse action under 5 U.S.C. chapter 75, the agency bears the burden of proving by preponderant evidence that its action was taken for such cause as will promote the efficiency of the service. *MacDonald v. Department of the Navy*, 4 M.S.P.R. 403, 404 (1980); 5 C.F.R. § 1201.56(b)(1)(ii). To meet this burden, the agency must prove its charge, "establish a nexus between [the charge] and the efficiency of the service," and "demonstrate that the penalty imposed is reasonable." *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). However, even if the agency carries this burden, the action may not be sustained if the appellant shows that it was based on a prohibited personnel practice under 5 U.S.C. § 2302(b). 5 U.S.C. § 7701(c)(2)(B); *see* 5 C.F.R. § 1201.56(b)(2)(i)(C), (c)(2).

The agency proved its charge.

As far as the charge is concerned, this case is similar in all material respects to *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 9-10, which also concerned a charge of "inability to perform the essential duties of a CBPO" based on a current psychological condition. To prove this charge, the agency must prove either a nexus between the employee's medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself

---

[3] The administrative judge found that the appellant did not proffer any evidence in support of her sex discrimination claim, and she denied the claim on that basis. ID at 44. The appellant does not contest the administrative judge's finding on review, and so we do not address the sex discrimination issue any further. *See* 5 C.F.R. § 1201.115 (The Board normally will consider only issues raised in a timely filed petition for review.).

or others.  *Id.*, ¶¶ 11-15.  In other words, the agency must establish that the appellant's condition prevents her from being able to safely and efficiently perform the core duties of her position.  *Id.*, ¶ 15.

The appellant argued that the agency lacked authority to order a fitness for duty examination in the first place.  IAF, Tab 55 at 5.  As relevant here, regulations issued by the Office of Personnel Management (OPM) permit an agency to order an employee who is subject to medical standards or physical requirements, such as the appellant, to attend a fitness for duty examination when "the agency has a reasonable belief, based on objective evidence, that there is a question about an employee's continued capacity to meet" these standards or requirements.  IAF, Tab 8 at 14-16; 5 C.F.R. § 339.301(b)(3).  In this case, the Port Director initiated the first fitness for duty examination after he arrived at work one day, saw a number of emergency vehicles parked outside, and surmised that something had happened with the appellant.  IAF, Tab 51-9, May 7, 2024 Hearing Transcript (HT-1) at 64-65 (testimony of the Port Director).

Although it turned out that the emergency response was unrelated to the appellant, the Port Director nevertheless initiated the fitness for duty process.  *Id.* at 65.  The appellant argued that an emergency response incident which had nothing to do with her was not "objective evidence" supporting a reasonable belief that there was a question about her continued capacity for employment as a CBPO.  IAF, Tab 55 at 5.  The administrative judge disagreed.  She found that, although it would be problematic if the emergency response incident were the only reason for initiating the fitness for duty examination, the need for an examination was supported by other evidence, both from the Port Director's personal observations and reports he received from other employees, concerning the appellant's increasingly erratic behavior.  ID at 9.

On petition for review, the appellant disputes the administrative judge's finding, arguing that the Port Director's inaccurate assumption about the emergency vehicles did not satisfy the reasonable belief standard.  PFR File,

Tab 3 at 19. She further argues that no documented performance or safety issues existed when the agency initiated the examination, and that the "vague, years-old complaints" on which the fitness for duty examination was based had never resulted in any discipline or counseling and therefore did not constitute objective evidence of incapacity to perform in her position. *Id.* at 21. She states that the administrative judge erred by crediting agency management's subjective suspicions and overlooking the absence of any new or concrete incidents that would have justified a fitness for duty examination. *Id.* at 21, 23-25.

We have considered the appellant's arguments, but we disagree. We find that the Port Director did not rely on the presence of emergency vehicles as a basis for initiating the fitness for duty process; rather, the fact that his first thought was that the vehicles had something to do with the appellant prompted him to act on his preexisting belief that the appellant may not be fit for duty. HT-1 at 64-65 (testimony of the Port Director).

We further find that the Port Director's belief was reasonable and based on objective evidence. In support of his request for a fitness for duty examination, the Port Director offered a general description of the appellant's behavior, backed up with numerous concrete examples from three supervisory employees who had worked with the appellant. IAF, Tab 9 at 19, 26-28. Although some of these specific examples of troubling behavior occurred in years prior, three of them occurred in 2020—earlier in the same year that the Port Director initiated the fitness for duty process. *Id.* at 26-28. These more recent incidents included the appellant's telephone call to a supervisory employee from the women's restroom during which she was crying, "talking in circles," and incomprehensible. *Id.* at 26. In a different meeting with supervisory employees, the appellant "bounced from topic to topic mentioning a discussion with her doctor, [and] the Employee Assistance Program," accused a coworker of "[p]ushing work off on her," and indicated that she had not found a psychiatrist who could handle "such issues." *Id.* at 27. Finally, in the third incident, the appellant sent an email to a supervisor

expressing rambling concerns regarding an office environment of "backhand talk," which included descriptions of incidents such as "coworkers huddled, hushed with smirks on their faces when [the appellant] enter[ed]" an area. *Id.* at 28.

Furthermore, the standard for ordering a fitness for duty examination does not require that the employee in question have already exhibited some chargeable misconduct or performance deficiency; it only requires a reasonable belief that the employee's condition may render her unable to perform her duties going forward.[4] 5 C.F.R. § 339.301(b)(3); *see Boulineau v. Department of the Army*, 57 M.S.P.R. 244, 245, 247-48 (1993) (concluding that an agency did not violate OPM's fitness for duty regulations when it ordered a helicopter flight instructor who was subject to medical standards to attend a medical examination based on the agency's reasonable suspicion that he had coronary artery disease, which would cause him to be medically unfit for flying). Considering the evidence as a whole, we agree with the administrative judge that the agency had sufficient basis under 5 C.F.R. § 339.301(b)(3) to order the appellant to undergo a fitness for duty examination. ID at 8-11.

Regarding the fitness for duty determination itself, the administrative judge considered the various opinions of the four psychiatrists discussed above, as well as the opinions of another psychiatrist, a licensed clinical social worker, and a psychiatric mental health nurse practitioner, all three of whom had been treating the appellant and opined that she was fit for duty. ID at 13-27; IAF, Tab 42 at 13-14, 23-24, 58-59, Tab 44 at 5, 7, 9, 11, 24. In assessing the probative weight of a medical opinion, an administrative judge must consider whether the opinion was based on a medical examination, whether the opinion provides a reasoned explanation for its findings as distinct from mere conclusory assertions,

---

[4] The issue of whether the agency could have taken an adverse action based directly on the workplace conduct that precipitated the fitness for duty examination is not before us, and therefore we do not address it here. IAF, Tab 9 at 66-84.

the qualifications of the expert rendering the opinion, and the extent and duration of the expert's familiarity with the treatment of the appellant. *Bahm v. Department of the Air Force*, 38 M.S.P.R. 627, 632 (1988). The administrative judge appropriately applied these factors in determining the probative weight of the medical opinions, recognizing that "[t]his appeal presents a complex analysis of multiple competing medical opinions." ID at 28-36.

Out of all the various mental health opinions, the administrative judge accorded the least weight to those of Dr. S. The main reason for this was that Dr. S rendered both of his opinions before the appellant participated in mental health treatment following her initial fitness for duty examination, and therefore his opinions were not based on the latest information. ID at 28-29. As for the other opinions, the administrative judge found that, for each one, there were both positive and negative factors as far as their probative value was concerned. ID at 28-29. However, she found that the main distinction between the opinions finding the appellant fit for duty and the opinions finding her not fit for duty was "whether the evaluator relied on the appellant's or her coworker's explanations of her behavior at work." ID at 29-30. She therefore found that the fitness for duty issue ultimately came down to whether the agency's or the appellant's accounts were more credible. ID at 30. The administrative judge evaluated the relevant evidence and found that the record supported the agency's contention that the appellant frequently exhibited troubling behaviors at work. These behaviors included disproportionate emotional reactions to normal work-related stressors, rambling and incoherent denunciations of her coworkers, and interactions with other agency employees that were variously confrontational, dismissive, confusing, rude, and insubordinate. ID at 30-36. Accordingly, the administrative judge credited the opinions of Drs. A and P, both of whom relied on the agency's account and found the appellant not fit for duty. ID at 36.

On petition for review, the appellant argues that the administrative judge took a one-sided approach to her assessment of the medical evidence and states

that the weight of that evidence supports her continued fitness for duty. PFR File, Tab 3 at 21-22. She argues that the administrative judge should have credited the fitness for duty determination of Dr. W, who not only evaluated her in person and conducted a Minnesota Multiphasic Personality Inventory test, but agreed with her various treatment providers, who also examined her in person, that she was fit for duty. *Id.* at 21-22. The appellant is correct that in-person examinations and the expert's familiarity with the treatment of the patient are favorable factors for assessing the probative value of a medical opinion. *See Bahm*, 38 M.S.P.R. at 632. However, far from taking a one-sided approach, the administrative judge carefully weighed these factors and others in arriving at her decision. ID at 28-36. Ultimately, we agree with her that the opinions of Drs. A and P have the most probative value because they were based on the most complete and accurate set of facts. ID at 29-36.

The appellant also disputes the administrative judge's findings of fact about her behavior at work, arguing that her version of events was more credible than the agency's. PFR File, Tab 3 at 20-21. Specifically, she argues that a number of the alleged behavioral incidents could not be substantiated and that the remainder were normal reactions to workplace stress. *Id.* She further argues that the administrative judge should not have considered her EEO-related comments as evidence of mental instability. *Id.* at 20.

As for whether the agency's account of her behavior is supported by the record, the appellant states that agency management admitted that "several of the alleged behavioral incidents could not be verified or lacked reliable corroboration." PFR File, Tab 3 at 20. A petition for review must contain sufficient specificity to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record, *Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992), and it must also be supported by specific references to the record, 5 C.F.R. § 1201.114(b). By our count, the agency detailed 30 separate behavioral incidents between

November 2020 and February 2022, in support of its fitness for duty examination request. IAF, Tab 9 at 66-84. However, the petition for review does not specify which of these incidents the appellant believes are unsupported by the record, and it does not even generically identify where in the record any management admissions about them might be found. Nevertheless, we have reviewed the administrative judge's findings in relevant part.

In light of the multiplicity of allegations regarding the appellant's behavior, the administrative judge focused her analysis on the subset of incidents highlighted in the doctors' reports and witness testimony. ID at 30. We think that this approach was appropriate under the circumstances, and the appellant does not specifically contest it. In his fitness for duty evaluation, Dr. P considered a statement by the appellant's coworker, the National Treasury Employees Union Chapter President, who "reported receiving so many texts, emails and phone calls [from the appellant] 'at all hours of the day and night' that it impacted the [Chapter President's] personal life and forced her to change how she represents bargaining unit members." IAF, Tab 10 at 11. The Chapter President testified about these matters, and about the appellant's inflexibility in carrying out her duties, her paranoia about her colleagues, and her extreme emotional lability in the workplace, all of which had increased markedly in recent years. HT-1 at 10-30, 33-35, 41-43 (testimony of the Chapter President). The administrative judge found the Chapter President's testimony "particularly credible" in light of her long experience working closely with the appellant, her apparent lack of bias, and her demeanor at the hearing. ID at 30-31. We see no basis to disturb this credibility determination. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

Dr. P also considered the agency's account of the appellant's behavior at a retirement luncheon on February 16, 2022. IAF, Tab 10 at 11. The agency alleged that the appellant had been helping to prepare the luncheon and was uncharacteristically cheerful, but when she learned that two other employees

whom she blamed for "ruining her career" would be attending, she burst into tears, crawled under her desk, and refused to attend the event. IAF, Tab 9 at 65. According to the agency, several employees reported the appellant's concerning behavior to management. *Id.* The administrative judge credited the agency's account, and we agree. ID at 31-32. The agency's account of this event is supported by witness testimony, HT-1 at 85-87 (testimony of the Port Director), and although the appellant has downplayed the matter, IAF, Tab 53-6, May 8, 2024 Hearing Transcript at 426-29 (testimony of the appellant), she did not deny the agency's allegations.

More generally, both Dr. P and Dr. A considered the 30 incidents of troubling behavior as a whole and concluded that the appellant's psychological state rendered her unfit for duty in a law enforcement position. IAF, Tab 10 at 10-13, Tab 11 at 80-83. Dr. P considered the appellant's documented history of "numerous . . . disruptive, emotionally charged interactions" with other employees, and found that she "presents symptoms of emotional lability, over reaction to usual work stressors, anxiety, problems following directions, interpersonal conflicts, and referential thinking and problems functioning as member of a team." IAF, Tab 10 at 11-12. Similarly, Dr. A found the appellant not fit for duty based on her "inappropriate behavior, impaired functioning, volatility, and interpersonal issues in the workplace." IAF, Tab 11 at 82. This is in contrast to Dr. W, who largely discounted the agency's concerns because she found that the appellant was able to offer rational explanations for her disturbing behavior. *Id.* at 75. However, as Dr. A explained, "Even if [the appellant] is able to appear intact, symptom free and functional with her therapist or doctor, her behavior and functioning at work has deteriorated." *Id.* at 82.

For the reasons explained in the initial decision, we agree with the administrative judge that the appellant's interpersonal conflicts and emotional outbursts cannot be explained away as rational responses to persecution by the agency or any other sort of work-related stress. The record contains a detailed

account of the appellant's increasingly aberrant behavior, drawn from multiple sources, as well as the in-person testimony of two credible, percipient witnesses, and the record does not support the appellant's assertion that she was being subjected to harassment or a hostile work environment. ID at 32-35. Because Drs. P and A based their opinions on the reliable account of the agency, and Dr. W and the appellant's treating practitioners based their opinions on the unreliable account of the appellant, we agree with the administrative judge that the opinions of Drs. P and A are entitled to greater weight. ID at 36.

Both Dr. P and Dr. A concluded that the appellant was not fit for duty because her ongoing conflicts with her coworkers, referential thinking, anger, crying, and other such behavior would likely interfere with her ability to act appropriately in stressful situations as a weapon-carrying law enforcement officer on a law enforcement team. IAF, Tab 10 at 12-13, Tab 11 at 82-83. Considering these psychiatric opinions in light of the record as a whole, we agree with the administrative judge that the agency proved its charge—that the appellant's psychological condition prevents her from safely and efficiently performing the duties of a CBPO. ID at 36; *see Haas*, 2022 MSPB 36, ¶ 15. Specifically, the agency has both established a nexus between the appellant's psychological condition and observed deficiencies in her conduct, as well as a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. *See id*, ¶ 15.

Regarding the appellant's EEO-related comments, it appears that she is referring in this context to the testimony of the Chapter President, who stated that the appellant would threaten to file an EEO complaint whenever things were not going her way, so much so that she described it as the appellant's "catch phrase." HT-1 at 19-20, 35-36, 40-41 (testimony of the Chapter President). However, there is no evidence linking the appellant's EEO-related comments, or the Chapter President's opinion about those comments, to either the fitness for duty examination or the removal action itself. As stated above, Dr. P's fitness for duty

determination was based in part on certain concerns voiced by the Chapter President. IAF, Tab 10 at 11. However, these concerns, as relayed to Dr. P by the agency, did not mention any EEO-related statements, and consequently Dr. P's report does not mention any EEO-related statements either. IAF, Tab 9 at 63, Tab 10 at 11. Rather, both the information that the agency provided and the fitness for duty report itself were limited to the Chapter President's complaints about the appellant contacting her at all hours of the day and night. IAF, Tab 9 at 63, Tab 10 at 11. Nor is there any indication that the Chapter President mentioned the appellant's EEO activity when she raised this matter with the agency. Similarly, the initial decision does not discuss the appellant's EEO-related comments in the context of the charge. ID at 12-36. We therefore do not agree with the appellant that the administrative judge treated the appellant's EEO-related comments "as a sign of clinical pathology."[5] PFR File, Tab 3 at 20.

The appellant further argues that the administrative judge "improperly gave decisive weight" to Dr. A's diagnosis that she suffered from a personality disorder, arguing that the diagnosis was unreliable for several reasons. PFR File, Tab 3 at 21; IAF, Tab 11 at 42, 82. We agree with the appellant that there are significant reasons to doubt the validity of Dr. A's diagnosis, but we do not agree that the administrative judge gave that diagnosis "decisive weight," or really any weight at all. In her initial decision, the administrative judge acknowledged that both Dr. A and Dr. P had diagnosed the appellant with a personality disorder, but

---

[5] To the extent that the appellant seeks to suggest that the Chapter President had a retaliatory animus that should be imputed to the agency, such a theory of liability is not available here because the appellant does not allege that the Chapter President was a management official. *See Staub v. Proctor Hospital*, 562 U.S. 411, 416, 419-22 (2011) (recognizing that an employer may be liable when its "agent," i.e., a supervisor, acting because of an improper animus, influences an official who is unaware of the improper animus when implementing a personnel action). Further, the appellant's affirmative defense of retaliation for EEO activity is based on a different set of facts, and we address it separately below. IAF, Tab 30 at 6, Tab 55 at 7-9, 19-22.

she found that their personality disorder diagnoses were "questionable." ID at 29. Nevertheless, she found that their fitness for duty determinations were based on the appellant's symptoms rather than the diagnoses themselves. ID at 29. We agree. IAF, Tab 10 at 12, Tab 11 at 82-83.

Although Dr. A gave the appellant a diagnosis, it does not appear that the accuracy, or even the existence of the diagnosis was necessary for his determination that the appellant was not fit for duty. According to Dr. A, "the diagnosis is not the same as whether someone is Fit-for-Duty or not." HT-1 at 180 (testimony of Dr. A). The more important question is whether the employee's behavior and mental stability are compatible with employment in her position. *Id.* at 180-81 (testimony of Dr. A). Therefore, regardless of whether the appellant's behavior was attributable to a personality disorder as Dr. A found, IAF, Tab 11 at 42, 82, an adjustment disorder as Dr. W found, *id.* at 75, or to any of the other various diagnoses proffered by the experts in this case, the fact remains that the appellant's condition renders her unable to act calmly and rationally and work with others in high-stress situations, which is a critical requirement for a weapons-carrying law enforcement officer, *id.* at 82-83.

The appellant argues more generally that the administrative judge did not hold the agency to its standard of proof on the charge, i.e., that the agency must prove either a nexus between the employee's medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. PFR File, Tab 3 at 22-23; *see Haas*, 2022 MSPB 36, ¶ 15. She states that there were no documented performance deficiencies or safety incidents that could support a finding that her continued performance as a CPBO would pose a high probability of physical risk. PFR File, Tab 3 at 22. She argues that she has no documented history of violence or drug abuse and that even Dr. A admitted that there was insufficient evidence to deem her a serious threat. *Id.* at 22-23.

We have considered the appellant's arguments, but we do not agree. As explained above, an agency is not required to wait until an employee's medical condition results in actual harm before taking action, as long as it can prove that her condition carries with it a high probability of harm given the nature of her work. Although Dr. A acknowledged that there was insufficient evidence to conclude that the appellant herself was at risk of committing violence in the workplace, he went on to explain that her ability to handle stressful situations, and particularly her ability to work with others in handling stressful situations, was seriously impaired. HT-1 at 195-96 (testimony of Dr. A). In the event that the appellant might be called upon to act in her capacity as a weapons-bearing law enforcement officer, we find that there is an unacceptably high probability that her demonstrated inability to remain calm and cooperate with her team would result in injury to herself or others. We therefore disagree with the appellant that the administrative judge did not hold the agency to its burden, and we agree with the administrative judge that the agency proved its charge.[6]

The appellant did not prove her disability discrimination claim.

The administrative judge adjudicated the appellant's disability discrimination claim under both status-based and reasonable accommodation theories. ID at 37-40. To prevail under either of these theories, an appellant must prove that she is a "qualified individual with a disability." *Haas*, 2022 MSPB 36, ¶¶ 28-29 (quoting 42 U.S.C. § 12112(a), (b)(5)). A disabled individual is one who actually has a medical impairment "that substantially limits one or more major life activities," has a history of such an impairment, or is regarded as having an impairment that is not transitory and minor. 42 U.S.C. § 12102(1), (3). A qualified individual is someone who "can perform the

---

[6] In addition to establishing a high probability of harm in the future, we also find that the agency has established a link between the appellant's psychological condition and observed deficiencies in conduct. The record is replete with examples of the appellant behaving in ways both inappropriate for the workplace and unfair to the people who had to work with her.

essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8).

In this case, the administrative judge found that the appellant was actually disabled. ID at 37; 42 U.S.C. § 12102(1)(A). The administrative judge then determined that the appellant did not prove that she was qualified to perform the essential functions of the CBPO position or a vacant position to which she could have been reassigned. ID at 38-40.

On petition for review, the appellant argues that the administrative judge failed to consider whether the appellant fit the definition of "disabled" under the "regarded as" prong of 42 U.S.C. § 12102(1)(C). PFR File, Tab 3 at 23. We agree with the appellant that, in addition to her having an actual disability, the relevant agency officials regarded her as disabled. *See* 29 C.F.R. § 1630.2(g)(2) (providing that "[a]n individual may establish coverage under any one or more of the[] three prongs of the definition of disability" set forth in 42 U.S.C. § 12102(1) and 29 C.F.R. § 1630.2(g)(1)). However, we also agree with the administrative judge that this does not change the result because, regardless of which definition of "disability" applies in this case, the appellant is still not "qualified." ID at 37-40. Furthermore, to the extent that the appellant is arguing that she meets the definition of disability solely under the "regarded as prong," this is inconsistent with her reasonable accommodation claim. An employer does not violate the Americans with Disabilities Act (ADA), as amended, when it does not provide a reasonable accommodation to an individual who meets the definition of an individual with a disability "solely" on the basis that she is "regarded as" disabled.[7] 42 U.S.C. § 12201(h); *see Pridgen v. Office of Management and*

---

[7] The appellant's "regarded as" argument appears to be in opposition to the administrative judge's finding that she had a disability that rendered her unable to perform the essential functions of her CBPO position. On petition for review, the appellant downplays her condition, characterizing it as mild situational anxiety, and faults the agency for failing to accept her "diversity." PFR File, Tab 3 at 23. For the reasons explained above in connection with the charge, we do not agree with the appellant's characterization of her psychological condition. The record shows that the

*Budget*, 2022 MSPB 31, ¶ 35 (explaining that disability discrimination claims before the Board arise under the substantive standards of section 501 of the Rehabilitation Act, which incorporate the ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008, and therefore the Board applies ADA standards to determine whether there has been a violation of the Rehabilitation Act).

The appellant also argues that the agency "did not demonstrate that she could not be accommodated if necessary," and it failed to "show that her alleged limitations could not be managed with minimal adjustments." PFR File, Tab 3 at 24. The agency, however, does not bear the burden of proving a negative; it is the appellant's burden to the existence of a reasonable accommodation. *Conaway v. U.S. Postal Service*, 93 M.S.P.R. 6, ¶ 30 (2002). As an initial matter, an appellant must articulate a reasonable accommodation under which she believes she could perform the essential duties of her position or of a vacant position to which she could be reassigned. *Pickens v. Social Security Administration*, 88 M.S.P.R. 525, ¶ 7 (2001); *see Widger v. Veterans Administration*, EEOC Petition No. 03880131, 1988 WL 920889 at *4 (Nov. 1, 1988) (stating that to establish a prima facie case of discrimination, an employee "must make a plausible showing that reasonable accommodation is possible which will permit him to perform all the essential functions of his position"). Because the appellant has not suggested any accommodations that could be implemented in her CBPO position, and she has not identified any position at or below her current grade level to which she could be reassigned, we agree with the administrative judge that the appellant has not proven that she is able to perform the essential functions of any available position with or without reasonable accommodation. ID at 38-40; *see Taylor v. Department of Homeland Security*, 107 M.S.P.R. 306,

---

appellant's condition seriously impaired her ability to conduct herself appropriately in the workplace, and that it posed an unacceptable risk of harm should she find herself part of a law enforcement response to a dangerous situation.

¶ 8 (2007) (explaining that an employer is not obligated to assign an employee to a position at a higher grade under the Rehabilitation Act). Therefore, the appellant has not shown that she is a qualified individual with a disability, and she cannot prevail on her claim of disability discrimination based on either a reasonable accommodation or disparate treatment theory. *See Haas*, 2022 MSPB 36, ¶ 30.

The appellant did not prove her affirmative defense of retaliation for EEO activity.

To prove an affirmative defense of retaliation for EEO activity protected under Title VII, an appellant must show that the prohibited consideration was at least a motivating factor in the agency's decision. *Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 30. However, to prove an affirmative defense of retaliation for EEO activity protected under the Rehabilitation Act, an appellant must prove that the prohibited consideration was a but-for cause of the agency's action. *Id.*, ¶¶ 44-47. The EEO activity that forms the basis for the retaliation claim in this appeal consists of various complaints that the appellant filed between 2004 and 2007, as well as four complaints that she filed between February 2021 and September 2022. IAF, Tab 9 at 86-87, Tab 30 at 6. The appellant also claims retaliation based on statements that she made to a Supervisory CBPO intimating that she intended to file an EEO complaint. IAF, Tab 55 at 7-8. Because the appellant's EEO activity variously concerned Title VII claims and Rehabilitation Act claims or was otherwise ambiguous, for purposes of this analysis, we apply the less-stringent motivating factor standard. *See Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 33 (concluding that because an appellant did not show that his protected activity was a motivating factor in the agency's action, he necessarily failed to meet the more stringent "but-for" standard).

In her initial decision, the administrative judge first addressed the actual EEO complaints that the appellant filed. She found that the complaints that the appellant filed between 2004 and 2007 were too far removed in time and

circumstances from the actions at issue here to create an inference that they played any part in the removal. ID at 42. As for the appellant's more recent complaints, the administrative judge found that they could not have been a motivating factor in the agency's decision to order a fitness for duty examination because the appellant filed them after the examination was ordered. ID at 43. She further found that the appellant's EEO activity could not have been a contributing factor in the removal action itself because neither the proposing nor the deciding officials were aware of any of the appellant's EEO activity. ID at 42. The appellant does not dispute these findings on review, and we agree with the administrative judge's analysis.

As for the appellant's alleged comments concerning filing an EEO complaint, she argued that the agency engaged in retaliation when it related these comments to the fitness for duty examiners and described them as "threats." IAF, Tab 55 at 7-8, 20, 22. The administrative judge found, however, that the agency was merely relaying relevant events as they occurred and "that the agency's references to the appellant stating she would file EEO complaints do not create an inference that EEO retaliation was a motivating factor in or but-for cause of the appellant's removal." ID at 43. On petition for review, the appellant argues that her comments about filing EEO complaints constituted protected activity, and the agency engaged in reprisal treating these comments as a sign of mental instability and using them against her as a basis for medical disqualification. PFR File, Tab 3 at 24.

We agree with the appellant that threatening to file an EEO complaint constitutes protected activity under 5 U.S.C. § 2302(b)(1). *Galvan v. U.S. Postal Service*, EEOC Appeal No. 01945831, 1996 WL 93594 at *5 (Feb. 29, 1996) (recognizing that "threatening to file an EEO complaint constitutes protected activity under Title VII"); *see Jones v. Department of Energy*, 120 M.S.P.R. 480, ¶ 3 n.2 (2013) (stating that a claim of EEO retaliation is cognizable under 5 U.S.C. § 2302(b)(1)(A)), *aff'd per curiam*, 589 F. App'x 972 (Fed. Cir. 2014)).

However, we find insufficient evidence to conclude that the agency construed the comments at issue as threats to file an EEO complaint. The Supervisory CBPO relayed, in relevant part, the following information about his encounter with the appellant: "When CBPO Snyder was speaking to me regarding 'filing another one,' the tone was almost threatening in nature. I felt as though she was insinuating that if [a certain employee] was not removed, that she would file another [Inspector General] complaint, etc." IAF, Tab 10 at 33. The Supervisory CBPO also stated as follows:

> She continued by stating that she had her weapon removed and was never told the reason, and that if she loses her position carrying a firearm, that it will be fought in "many, many court cases." The comment was made rather succinctly and in a forceful manner, and I felt as though Gabi intended it to be threatening.

*Id.* at 29.

Although a threat to file an Inspector General complaint may be protected by the Whistleblower Protection Act under 5 U.S.C. § 2302(b)(9)(C), and a threat to file a lawsuit against an agency may be protected under 5 U.S.C. § 2302(b)(9)(A)(ii), we find that, absent an indication that the complaint or lawsuit would pertain to discrimination, such activity is not protected under 5 U.S.C. § 2302(b)(1), and it cannot form the basis for an EEO retaliation claim. The appellant could, perhaps, have raised an affirmative defense under 5 U.S.C. § 2302(b)(9)(A)(ii) or (b)(9)(C) based on the agency's use of her comments, but she did not do so. IAF, Tab 45 at 5. The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016). Even assuming that the appellant were attempting to raise such a claim here, she has not alleged that it is based on new evidence.

Further, the burdens of proof, analytical framework, and remedies available for a claim of EEO reprisal are different from those for a claim of whistleblower

reprisal or a claim of non-EEO reprisal under 5 U.S.C. § 2302(b)(9)(A)(ii). *Compare Pridgen*, 2022 MSPB 31, ¶¶ 20-24, 30, 46, *with Young v. Department of Homeland Security*, 2024 MSPB 18, ¶¶ 10-11, *and Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016). To adjudicate the appellant's claim under one of these alternative frameworks would require a remand and complete relitigation of the issues, which is not something that the appellant has requested, and which we would not find good cause to grant. *See* 5 C.F.R. § 1201.24(b) (providing that an appellant may not raise a new claim or defense after the prehearing conference, except for good cause shown).

For these reasons, we agree with the administrative judge that the appellant did not prove her affirmative defense of retaliation for EEO activity, but we modify the administrative judge's analysis to find that the appellant's comments to the Supervisory CBPO, quoted above, did not constitute protected EEO activity.

We decline to consider the appellant's claims of harmful error and violation of due process.

On petition for review, the appellant argues that the agency committed procedural errors in the fitness for duty process by providing Drs. A and S with selective information and by failing to give her notice and an opportunity to respond to the specific reasons for the fitness for duty examination. PFR File, Tab 3 at 25-26. She argues that the agency thereby either committed harmful error or violated her right to due process. *Id.*

The appellant, however, did not raise these due process and harmful error claims before the administrative judge. As noted above, the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay*, 123 M.S.P.R. 245, ¶ 6. We find that the appellant's due process and harmful error claims are not based on previously unavailable evidence, and she has otherwise not explained why she did not raise

them before the close of the record below. *See* 5 C.F.R. § 1201.114(b) (Any petition for review that contains new evidence or argument must include an explanation of why the evidence or argument was not presented before the record below closed.). We therefore decline to consider these late-raised affirmative defenses.

The penalty of removal is reasonable and promotes the efficiency of the service.

An agency may remove an employee if she is unable, because of a medical condition, to perform the duties of her position. *Bullock v. Department of the Air Force*, 88 M.S.P.R. 531, ¶ 7 (2001). Accordingly, the administrative judge in this case upheld the penalty of removal. ID at 44-46. The appellant has not contested the administrative judge's penalty analysis on review, and we find no reason to disturb it.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.